OPINION OF THE COURT
Memorandum.
Order, insofar as appealed from, reversed without costs, so much of the motion by defendant Ford Motor Company, and of the cross motion by defendant Patriot Ford, as sought summary judgment on the ground that the action against them is barred pursuant to a release denied, complaint reinstated, and matter remitted to the Civil Court for a determination of said defendants’ respective motions insofar as they sought summary judgment on other grounds.
On May 9, 2002 plaintiffs, who were automobile salesmen, attended a “Ride and Drive” seminar, at which they allegedly sustained serious injuries while riding as passengers in a Ford Expedition during a test drive of the vehicle. The vehicle was owned by defendant Ford Motor Company (Ford) and was being driven by an employee of defendant Patriot Ford (Patriot). Before entering the vehicle, plaintiffs executed a release which provided that plaintiffs were waiving, releasing and discharging, inter alia, the promoters, participants, officials, car owners and drivers from all loss or damage or claim for injury “arising out of or related to the event(s), whether caused by the negligence of the releasees or otherwise.”
*67 Plaintiffs thereafter brought this action sounding in negligence against, inter alia, Ford and Patriot. Ford moved, and Patriot cross-moved, for summary judgment dismissing the complaint, on the grounds, among others, that they were not liable for the accident, that plaintiffs had not suffered serious injuries, and that plaintiffs are barred from bringing the action against them because plaintiffs had executed a release and had waived all claims for injuries arising out of the event. In addition, Ford argued that it cannot be held liable as owner of the vehicle pursuant to Vehicle and Traffic Law § 388 (1), as plaintiffs had waived their right to hold Ford liable. In opposition to the motions, plaintiffs argued, inter alia, that the release was inapplicable since the injuries were not sustained during the event, as the individual operating the vehicle drove it off the designated area where the test drive was to be conducted.
The Civil Court granted Ford’s motion and Patriot’s cross motion for summary judgment on the ground that plaintiffs had signed the release and had thereby released Ford and Patriot from liability for any and all injuries sustained at the event. The court further found that Vehicle and Traffic Law § 388 did not invalidate the release executed by plaintiffs in favor of Ford, as owner of the vehicle, since there was no language in the statute prohibiting such an agreement. The court did not reach the remaining grounds raised in support of the motions for summary judgment.
On appeal, plaintiffs contend that the release is not enforceable against them because it is vague and ambiguous, and that it is inapplicable because the acts alleged did not arise out of the event, since the driver drove the vehicle off the intended course for the “Ride and Drive.”
In our view, the Civil Court erred in granting summary judgment based upon the release. Whereas the release contains a provision releasing and discharging Ford and Patriot for all claims for injury arising out of or related to the “event(s),” plaintiffs have raised a question of fact as to whether the injuries arose out of or are related to the “event(s).” The term “event(s)” is not defined in the release. Since the language of the agreement is ambiguous, its construction may not be resolved by the court on a motion for summary judgment (see NFL Enters. LLC v Comcast Cable Communications, LLC, 51 AD3d 52, 61 [2008]).
Additionally, plaintiffs’ action against Ford is premised on a vicarious liability theory pursuant to Vehicle and Traffic Law
*68 § 388 (1). Vehicle and Traffic Law § 388 states, in relevant part, that
“[e]very owner of a vehicle used or operated in this state shall be liable and responsible for death or injuries to person or property resulting from negligence in the use or operation of such vehicle, in the business of such owner or otherwise, by any person using or operating the same with the permission, express or implied, of such owner.”
Vehicle and Traffic Law § 388 was enacted to “ensure access by injured persons to a financially responsible . . . person against whom to recover for injuries” (Morris v Snappy Car Rental, 84 NY2d 21, 27 [1994] [internal quotation marks and citations omitted]). In Morris, a similar release of a lessor of a vehicle by the lessee was held to be against public policy. While said holding was ultimately preempted by federal law (49 USC § 30106; see Graham v Dunkley, 50 AD3d 55 [2008], appeal dismissed 10 NY3d 835 [2008]) with respect to releases given by lessees of rental vehicles to their lessors, the rationale of the Morris decision is still viable with respect to releases given by ones other than lessees in favor of owners of vehicles. Consequently, the attempt by Ford to completely disclaim liability imposed upon it as an owner under section 388 is contrary to public policy, and, thus, the release, insofar as it is in favor of Ford, is, in any event, unenforceable (see Morris, 84 NY2d at 27; Griffin v Fun Jung La, 229 AD2d 468, 469 [1996]), unless Ford can establish at trial that the operator of said vehicle used it without Ford’s express or implied permission.
Since the Civil Court did not address the alternate grounds raised in the motion and cross motion for summary judgment, the matter must be remitted to the Civil Court for further consideration and determination of said remaining grounds (see e.g. McElroy v Sivasubramaniam, 305 AD2d 944 [2003]; McCarty v Community Hosp. of Glen Cove, 203 AD2d 432 [1994]).
Golia, J. (dissenting and voting to affirm the order, insofar as appealed from, in the following memorandum). I disagree with my colleagues’ characterization of the word “event(s)” as being “ambiguous.” The language of the waiver at issue provides that plaintiffs were “waiving, releasing and discharging from all loss or damage or claim for injury arising out of or related to the event(s) whether caused by negligence of the releasees or otherwise” (emphasis added).
Clearly the term “event(s)” related to the “Ford Expedition *69 Ride and Drive Seminar” and therefore included that portion of the seminar in which plaintiffs were allegedly injured while riding in the Ford Expedition test vehicle.
Plaintiffs’ contention that the driver left the confines of the test course has no basis in fact. Larry Kim testified at his deposition that he was a passenger in the Ford Expedition which was being driven in the “parking lot located next to the hotel where the seminar was being conducted.” This was certainly part of the “Ride and Drive Seminar.” There was no indication that the auto ever left the parking lot. Mr. Kim further testified at his deposition that his alleged injuries occurred “when the vehicle jumped over the mats” which, he stated, had been piled up in the parking lot. It is self-evident that such mats were piled up for the purpose of demonstrating how easily this vehicle could maneuver over those mats during the test.
Under the facts herein, I, unlike the majority, do not find, that “plaintiffs have raised a question of fact as to whether the injuries arose out of or are related to the ‘event(s)’.” Rather, I find that the claimed injuries did arise from and out of the “event(s).”
The nettlesome question here involves the issue of the above-indicated waiver vis-a-vis defendant Ford Motor Company. More specifically, the question is whether the Court of Appeals’ holding in Morris v Snappy Car Rental (84 NY2d 21 [1994]) mandates that such a waiver is unenforceable.
At first blush, the language of Morris appears to answer that question in the affirmative. The Court of Appeals stated unequivocally “that an attempt to disclaim completely the liability imposed by Vehicle and Traffic Law § 388 would be contrary to public policy” (Morris at 27). A closer reading of that case, however, clarifies the specific “public policy” that is being protected.
The Court of Appeals, in Morris, details the public policy at issue, and further, gives a historical analysis of Vehicle and Traffic Law § 388. The Court explains that the common law did not impose any liability upon an “absent” owner of a vehicle except under the theory of respondeat superior or agency. It further explains that Vehicle and Traffic Law § 388 was enacted in order to change that common-law rule and to impose liability upon an “absent” owner of a vehicle for the negligence of a person legally operating the car with the permission, express or implied, of the owner. In addition, the Court noted that Vehicle and Traffic Law § 370 required such owners to maintain a *70 certain minimum level of insurance. The Court went on to state that Vehicle and Traffic Law § 388 created liability where none previously existed; that the nature of that liability was vicarious; and that it was purely statutory in nature.
What is clear then is that the purpose of Vehicle and Traffic Law § 388 and Vehicle and Traffic Law § 370, when read together, was
“to ensure access by injured persons to a financially responsible . . . person against whom to recover for injuries . . . and to remove the hardship which the common law rule visited upon innocent persons by preventing an owner from escaping liability by saying that his car was being used without authority or not in his business” (Morris at 27 [citations and internal quotation marks omitted]).
Simply, there is nothing in this matter before us that would support a holding that an otherwise valid waiver would be contrary to the public policy concerns of Vehicle and Traffic Law §388.
In fact, Vehicle and Traffic Law § 388 need not even be involved here inasmuch as this vehicle was undeniably being used in the “business” of defendant Ford. Indeed, the sole purpose of this “test drive” was to educate and impress these and other car salespersons in order to assist them to sell this model of car to prospective customers. I cannot think of any use of a vehicle that is more clearly a “business” use than the one in this case.
It is not only my reading of Morris which leads me to conclude that the public policy at issue is the need to assure the public that there is recourse to a financially responsible individual. There are any number of cases that have similar findings (see Hassan v Montuori, 99 NY2d 348 [2003]; Fried v Seippel, 80 NY2d 32 [1992]; Connecticut Indem. Co. v 21st Century Transp. Co., Inc., 186 F Supp 2d 264 [2002]).
It is also interesting to note that Vehicle and Traffic Law § 388 has been entirely nullified as it relates to a rental or leased vehicle by the “Graves Amendment” (49 USC § 30106), which the New York courts have found to be a proper exercise of congressional power (see Graham v Dunkley, 50 AD3d 55 [2008], appeal dismissed 10 NY3d 835 [2008]).
It is undeniable that these plaintiffs, prior to entering into the vehicle, knowingly signed a document which clearly and specifically waived their right to file a claim against Ford Motor *71 Company for any injury sustained during the “Ride and Drive Seminar.” A waiver is the intentional relinquishment of a known right (Matter of Meachem v New York Cent. R.R. Co., 8 NY2d 293, 299 [1960]), and that is exactly what these two car salesmen did. They knowingly and intentionally relinquished their right to sue Ford Motor Company in the event they were injured during this demonstration.
Inasmuch as such waiver cannot be said to negatively impact the actual public policy expressed or implied by Vehicle and Traffic Law § 388,1 find the waiver to be valid on its face, and I vote to affirm the order of the motion court.
Pesce, EJ., and Rios, J., concur. Golia, J., dissents in a separate memorandum.